1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SEATTLE MONORAIL SERVICES, JOINT
VENTURE (A WASHINGTON GENERAL
PARTNERSHIP CONSISTING OF RAILSAFE,
INC. AND WMS, INC.),

               Plaintiff,

      v.

AFFILIATED FM INSURANCE COMPANY,

               Defendants

No. C05-1052-MJP

ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT

       This motion comes before the Court on Plaintiff's motion for partial summary judgment. The

two parties are engaged in a dispute about insurance coverage pertaining to the May 2004 fire on the

Seattle Monorail. The parties ask the Court to determine whether a monorail train is a "structure"

included within the meaning of the "Demolition and Increased Costs of Construction" clause of the

insurance contract. The Court GRANTS Plaintiff's motion for partial summary judgment. The term

"structure" does include a monorail train for the purpose of the insurance policy given the broad

dictionary definition, the inapplicability of ejusdem generis, the context of the contract and

Washington canons of construction for insurance policies.

**BACKGROUND**

       Plaintiff Seattle Monorail Services ("SMS") runs the Seattle Center monorail system which has

operated since the 1962 World's Fair. The system consists of .9 miles of track, stations, and two

trains– the Red Train and Blue Train. In order to insure the system, SMS has purchased a yearly all-

ORDER ON MTN
FOR SUMM JMT - 1

risk property insurance policy from Defendant Affiliated FM Insurance Co. ("AFM") since 2002.  On

May 31, 2004 the Blue Train caught fire due to an electrical short. The fire resulted in fire and smoke

damage to the Blue Train and smoke damage to the Red Train. After the fire and resulting

investigation, SMS engaged in a Fire Safety Assessment to determine if other measures were needed

to prevent future fires. The Washington Department of Transportation ("DOT") prohibited the

monorail from returning to service until all the repairs stipulated in the Fire Safety Assessment were

substantially completed. As a result, the Red Train returned to limited service in December 2004 and

full service in May 2005. The Blue Train returned to service in early May 2005.

The insurance policy contains a "Demolition and Increased Costs of Construction" ("D&ICC")

clause which governs the payment of cost and business interruption incurred as a result of "demolition,

construction, repair, replacement or use of buildings or structures" required by enforcement of a law

or ordinance. (Pl.'s Ex.1 to Decl. of Tom Albro at 16). The policy does not define the term "structure"

for the purposes of coverage under this clause.

**DISCUSSION**

**I. The dictionary definition of "structure"**

The insurance policy uses the term "buildings or structures" in the D&ICC clause but fails to

define "structure" for the purposes of coverage. As a result, both parties follow Washington court

precedent and  turn to the dictionary to determine the meaning of the word. <u>Boeing Co. v. Aetna Cas.</u>

<u>and Sur. Co.</u>, 113 Wn.2d 869, 877 (1990). Plaintiff's dictionary use results in a broad definition,

"something made up of a number of parts assembled in a particular pattern," which Plaintiff argues

clearly applies to monorail trains. Webster's II New Revised Dictionary (1996). Defendant narrows

the definition considerably to "something built or constructed, as a building, bridge or dam." Random

House Unabridged Dictionary (1997). Defendant further construes this definition to mean "something

ORDER ON MTN
FOR SUMM JMT - 2

1

2 affixed to the land," although this does not appear in any of the dictionary definitions.  (Def.'s Opp'n

3 at 8).

4       The "affixed to the land" portion of AFM's definition appears to come from <u>Condon Bros.,</u>

5 <u>Inc. v. Simpson Timber Co.</u>, 92 Wn.App. 275, 281 (1998). There the court found that Webster's

6 Dictionary gave examples of structures including "a dam, building, highway, road, railroad,

7 excavations and 'posts or stakes across a stream'" and subsequently held that "[b]ased on these

8 definitions...a five-mile section of a railroad, affixed to the land at the time a contract is formed, is a

9 'structure.'" <u>Id</u>. at 282. However, the Webster's Dictionary definition cited in the opinion actually

10 defines "structure" as "[a]ny construction, or any production or piece of work artificially built up or

11 composed of parts joined together in some definite manner. That which is built or constructed; an

12 edifice or building of any kind." <u>Id</u>. This definition does not contain any mention of a structure being

13 fixed to the land and the case language seems only to be a descriptor of the railroad in question in

14 <u>Condon</u>. "Affixed to the land" is not a definitional attribute of a structure as established by any cited

15 dictionary.

16       The Court does not find that the term "structure" is ambiguous.  Both the definition cited by

17 Plaintiff and that cited by Defendant are capable of encompassing one of Plaintiff's trains within its

18 language.  Not even Defendant's further qualification of the definition to include something "affixed to

19 the land" eliminates the trains, since they are permanently affixed to tracks which are permanently

20 affixed to track supports embedded in the ground.

21       Even if the term is found to be ambiguous, however, Plaintiff would still prevail.  Washington

22 courts construe ambiguous insurance contracts against the insurer. <u>See</u>, <u>Queen City Farms, Inc. v.</u>

23 <u>Central Nat'l Ins.</u>, 126 Wn.2d 50, 83 (1994); <u>Greer v. Northwestern Nat'l Ins. Co</u>, 109 Wn.2d 191,

24 201 (1987). This would compel the Court to resolve any ambiguity in favor of Plaintiff.  Under either

25

ORDER ON MTN
FOR SUMM JMT - 3

1

2 analysis, the plain meaning or dictionary definition of "structure" favors inclusion of the monorail train

3 within the policy.

4 **II. The rule of ejusdem generis does not apply**

5       Ejusdem generis is a canon of construction which provides that "when general terms are in a

6 sequence with specific terms, the general term is restricted to items similar to the specific terms." In re

7 Estate of Jones, 152 Wn.2d 1, 11 (2004). For example, a statute which allows for the sale of "gravel,

8 sand, earth or other material from state-owned land" would not allow the sale of timber under "other

9 material"  because "timber is not in the same general category as gravel, sand, and earth."

10 Muckleshoot Indian Tribe v. Washington Dep't of Ecology, 112 Wash.App. 712, 725-26 (2002).

11 AFM argues that the principle of ejusdem generis applies to the term "buildings or structures" thereby

12 limiting "structure" to mean "things such as buildings." (Def.'s Opp'n at 8).

13       Washington case law does not directly address the meaning of "buildings and structures" but it

14 does provide information on the use of ejusdem generis in construing terms. The Washington Supreme

15 Court uses ejusdem generis when "a general term follows a series of specific terms." Kitsap County v.

16 Allstate Ins. Co., 136 Wn.2d 567, 590-91 (1998). In addition, "[t]he ejusdem generis rule is generally

17 applied to general and specific words clearly associated in the same sentence in a pattern such as

18 '[specific], [specific], or [general]' or '[general], including [specific] and [specific].'" City of Seattle v.

19 State Dep't of Labor &Indus., 136 Wn.2d 693, 699 (1998). See, Southwest Washington Chapter

20 Nat'l Elec. Contractors Ass'n v. Pierce County, 100 Wn.2d 109, 116 (1983). Since the policy

21 provision does not follow this listing pattern, "buildings or structures" are not a term that Washington

22 courts would construe using the principle of ejusdem generis. Plaintiff's contention that ejusdem

23 generis does not apply to two words linked by an "or" is correct. Therefore the Court does not have to

24 narrowly define "structure" to mean "building" as Defendant's authority suggests.

25

ORDER ON MTN
FOR SUMM JMT - 4

1

2    **III. The context of the insurance policy contract**

3          Washington courts examine insurance policies in their entirety in order to give effect to all the

4    provisions of the contract. <u>Kitsap County</u>, 135 Wn.2d at 575. Both parties contend that the context of

5    the entire insurance contract supports their respective positions on the definition of "structure." They

6    utilize the provisions referring to "two Monorail trains, while attached to the track" and "site" of the

7    structure to bolster their arguments.

8          The policy specifically stipulates under "Special Terms and Conditions" that "[c]overage also

9    applies to the two Monorail trains, while attached to the Monorail track." (Policy as quoted in Def.'s

10   Opp'n at 11). Defendant cites this as proof of "a clear intent within the policy 'as a whole' only to

11   insure the monorail trains while they are on the track, and not when they are removed from the track."

12   (Def.'s Opp'n at 10). AFM construes the clause to show that the trains were insured as trains and not

13   buildings or structures. While this part of the policy does refer to the monorail cars as "trains" and not

14   "structures," this argument does not help Defendant negate coverage of the trains. Plaintiff has

15   provided evidence that the trains have not been removed from their track since their installation in

16   1962. (Decl. of Glenn Barney at 4). The trains remained attached during the repairs and thus would

17   fall under the coverage enumerated under the "Special Terms and Conditions." The "clear intent" of

18   the parties does not seem to be a limitation on the categorization of the trains but rather a stipulation

19   that the insurance plan provides coverage if the trains are on the tracks.

20         The D&ICC clause of the contract enumerates AFM's liability, which includes "[t]he actual

21   cost to rebuild on another site, but not including the cost of land; or the cost to rebuild on the same

22   site." (Policy quoted at Def.'s Opp'n at 10). Defendant refers to the use of the word "site" to bolster

23   the claim that "structure" requires a permanent attachment to land. "This language clearly evidences an

24   intent within the very provision at issue that the D&ICC coverage apply only to buildings or structures

25

ORDER ON MTN
FOR SUMM JMT - 5

1

2   affixed to a 'site' or 'land.'" (Def.'s Opp'n at 11). However, the monorail trains are part of a system

3   that is affixed to the land through the track supports, as illustrated by Plaintiff's strong analogy

4   (unrebutted by Defendant) between the train and an elevator. "Although an elevator does not

5   constitute a building, no lay person would ever think to dispute that the elevator is both a structure

6   and a component of a building. Similarly...the Monorail trains are both structures in and of themselves,

7   and a component of a larger structure– the Monorail System." (Pl.'s Mot. at 10). As parts of the

8   overall system which have never been removed, the Monorail trains are an integral part of the

9   structure which is affixed to the land and occupies a site.

10  **IV. Washington canons of construction for insurance policies**

11          Two Washington canons of insurance policy interpretation mitigate further against Defendant's

12  narrow approach to defining "structure"– (1) inclusionary provisions of policies are interpreted

13  liberally and (2) policies should be construed to give each term effect. The Washington Supreme Court

14  has stated "[w]here there is an ambiguity, an inclusionary clause in an insurance policy should be

15  construed liberally, while an exclusionary clause should be construed strictly against the insurer." Ross

16  v. State Farm Mut. Auto. Ins. Co., 132 Wn.2d 507, 523 (1997). The D&ICC clause at issue is

17  inclusionary because it grants, rather than eliminates, coverage for the insured. As a result, due to the

18  ambiguity discussed above, the clause should be interpreted broadly– here, "structure" should be

19  construed to cover a monorail train.

20          AFM claims that the inclusion/exclusion argument is "a distinction without a difference" and

21  that SMS's definition of "structure" is "unreasonably broad, encompassing almost anything, and it

22  renders the word 'building' in the phrase...meaningless surplusage, since SMS' broad

23  definition...subsumes the term 'building.'" (Def.'s Opp'n at 8-9). Potentially rendering "building"

24  meaningless is problematic because based on Washington law, the Court must interpret the policy so

25

ORDER ON MTN
FOR SUMM JMT - 6

as to give effect to all the provisions. <u>Kitsap County</u>, 135 Wn.2d at 575.  To give effect to "building," AFM contends the term should be limited because "[a]n interpretation of an insurance clause must be reasonable and take into account the purpose of the insurance at issue." <u>Lynott</u>, 123 Wn.2d at 689-90. However, as demonstrated above, broadly defining a "structure" as "something made of parts fitted or joined together to form a whole" coincides with the dictionary definitions and includes the monorail trains. The ambiguity (if any) stemming from multiple definitions of the term must be construed in favor of the insured for inclusionary clauses.

## CONCLUSION

The monorail trains in the system at issue in this litigation are "structures" for purposes of the insurance agreement between Plaintiff and Defendant.  Even if the term "structures" were found to be ambiguous, the Court would resolve that ambiguity in favor of Plaintiff.  Under Washington canons of insurance policy interpretation, the monorail trains are covered under the D&ICC provision of the policy at issue here.  Partial summary judgment will be GRANTED in favor of Plaintiffs.

The clerk is directed to provide copies of this order to all counsel of record.

Dated: September 23, 2005

Marsha J. Pechman
U.S. District Judge

ORDER ON MTN
FOR SUMM JMT - 7